BROWN, Chief Judge.
LA termination of parental rights hearing was held on October 23, 2012. Finding that the State of Louisiana, Department of Children and Family Services (“DCFS”) failed to establish by clear and convincing evidence the necessary grounds for termination of the mother’s parental rights, the trial court continued the minor children, C.W. and J.W., in the State’s custody.[1] It is from this portion of the trial court’s judgment that DCFS has appealed. For the reasons set forth below, we reverse and render.

Facts and Procedural Background

On June 4, 2011, an Instanter Order was issued removing C.W. (d.o.b. 06/16/09) and J.W. (d.o.b. 10/13/10) from the custody of their mother, Ch.W., and placing them into DCFS custody.[2] Affidavits filed in support of the Instanter Order alleged that the emergency circumstances which existed requiring removal of the two children were that: the mother, during an argument with her boyfriend and while in an alcoholic “blackout,” stabbed him in the neck with a fork;' the children were in the home at the time of the incident; the mother has a history of seizures; she was arrested and incarcerated on charges of the attempted second degree murder of her boyfriend; there were no family members at the time who could take the children; and DCFS had been involved with the mother on multiple occasions in the past (at that time, the mother was not caring for her 11 older children due to DCFS intervention/involvement). Since 1993, DCFS | ahas had five Family Services cases with the mother and some of her other children have been in foster care. In one of the Case Plan Review Notes, the case worker observed that the mother’s parental rights have been terminated to “at least” four of her 13 children.
A Continued Custody Hearing Order was signed on June 8, 2011, and thereafter, on July 1, 2011, DCFS filed a Child in Need of Care Petition pursuant to La. Ch.C. art. 606. The mother stipulated that the children were in need of care, they were adjudicated as such, and they were *1205 continued in State custody by judgment dated August 9, 2011. The initial goal was reunification with the parents. Numerous plans for reunification were drawn up and court-approved. In fact, while the mother was incarcerated,[3] the children were placed with their biological father.[4]
On June 19, 2012, a Permanency Hearing was held. Based upon the trial court’s findings that the children were thriving in their present placements, and that the parents had not attended the required parenting classes or met the goals of the reunification plan, the court approved a change in the goal from reunification to adoption. On September 12, 2012, DCFS filed a Petition for Termination of Parental Rights alleging that both parents had failed to substantially comply with the court-approved case plan for a year and three months and that there was no reasonable expectation of | ..¡significant improvement in them conduct in the near future. A hearing was held on October 23, 2012. The court terminated the parental rights of the father as to C.W. and J.W., but declined to terminate the mother’s parental rights, finding that DCFS had failed to prove its case as to the mother.
DCFS has appealed from the trial court’s judgment, urging that the court erred in finding that DCFS failed to establish that termination was warranted pursuant to La. Ch.C. art. 1015(5) by clear and convincing evidence. DCFS further asserts that termination of the mother’s parental rights is in the children’s best interest.

Discussion

Louisiana Children’s Code article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. State ex rel. 10-1111 (La.10/19/10), 49 So.3d 345; State ex rel. KG., 02-2886 (La.03/18/03), 841 So.2d 759. In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds set forth in article 1015 by clear and convincing evidence. State ex rel. H.A.B., supra. Even upon finding that the State has met its evidentiary burden, a court should not terminate parental rights unless it determines that termination is in the child’s best interest. La. Ch.C. art. 1037(B); State ex rel. H.A.B., supra; State ex rel. C.J.K., 00-2375 (La.11/28/00), 774 So.2d 107. Whether termination of parental rights is warranted is a question of fact, and a trial court’s determinations will not be set aside in the absence of manifest error. State \4ex rel. H.A.B., supra; State ex rel. KG., supra; State ex rel. J.T. v. J.M., 46,090 (La.App.2d Cir.12/12/10), 56 So.3d 1009.
DCFS sought termination of the mother’s parental rights under La. Ch.C. art. 1015(5), which provides as a ground for termination:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and *1206 despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable and permanent home.
La. Ch.C. art. 1036(C) provides that under article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
(1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to. do so by the court when approving the case plan.

(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions. (Emphasis added).
La. Ch.C. art. 1036(D) provides that under article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:

Is(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonable indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior. (Emphasis added).
It is undisputed that the children have been in the custody of the State for more than one year, having been removed from them mother’s custody by an Instanter Order dated June 4, 2011. At the time of the termination hearing, October 23, 2012, the children had been in DCFS custody for approximately 16 months, which exceeds the one-year period set forth in La. Ch.C. art. 1015(5). During this time, the mother was given the opportunity to work on achieving the goals of her case plan and improving the conditions or conduct that led to removal of the children from her custody. Assessment of whether there is a reasonable expectation of significant improvement in the parent’s condition in the near future should be made in light of the purposes stated in La. Ch.C. art. 1001, particularly that the proceedings shall be conducted expeditiously to avoid delays in resolving the status of the parent and in achieving permanency for the children. State ex rel. L.R.S., 38,812 (La.App.2d Cir.06/23/04), 877 So.2d 1040.
Contrary to the findings of the trial court, the evidence shows that there was no substantial compliance with her case plan by the mother. The | f,evidence further shows a lack of any reasonable expec *1207 tation of significant improvement in the mother’s conduct in the near future.
The trial court discounted the family’s lengthy prior history with DCFS because it was not specifically pled in the Petition for Termination of Parental Rights. ■ However, the OCS Investigative Reports and Case Plans, filed in support of the various pleadings in this case, all contain documentation of the family’s prior history with DCFS. Likewise, the record contains testimony, which was not objected to by either the mother’s or the children’s counsel, discussing this history. The trial court also refused to consider the mother’s diminished mental capacity as it affects her ability to care for the children, finding again that since this was not specifically pled in the termination petition, it could not be considered.[5]
Mental illness or disability alone is insufficient grounds to warrant termination of parental rights. State ex rel. L.R.S., supra. The parent’s mental state, however, as it relates to the ability to care for the child is an important factor to be considered in a termination proceeding. State ex rel. J.A., 99-2905 (La.01/12/00), 752 So.2d 806; State ex rel. L.R.S., supra.
This family’s involvement with DCFS dating back to 1993, and the mother’s mental capacity as it affects her ability to properly care for her children, are not in and of themselves grounds for termination under La. Ch.C. art. 1015 and therefore were not required to be specifically pled. Instead, under La. Ch.C. art. 1036(C) and (D), evidence of the family’s 17prior case history and the mother’s mental capacity may be used to establish lack of parental compliance with a case plan (i.e., to show repeated failure to comply with a required program of treatment/rehabilitation services (1036(C)(5)), lack of substantial improvement in redressing the problems preventing reunification (1036(C)(6)) and/or the persistence of conditions that led to removal or similar potentially harmful conditions (1036(C)(7)) and to establish lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future (i.e., to show, inter alia, any mental deficiency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior (1036(D)(1)) and/or to show any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or an established pattern of behavior (1036(D)(3)). See State ex rel. J.A., supra; State ex rel. L.R.S., supra.
While the mother did take actions toward completing her case plan, such as attending the required parenting classes (although there is still an outstanding recommendation for individual parenting classes based upon serious concerns about her inability to care for her children without 24/7 supervision or assistance), and making an effort during the last five-six months of the case plan to attend every scheduled visitation with the children, we do not find these to constitute substantial compliance, in light of what was not accomplished.
| «Regina Craig, the DCFS case worker assigned to this family’s case, testified that the mother has limitations that have hin *1208 dered her from being able to care and provide for her children. This is evidenced by the fact that 11 of her 13 children have been taken from or voluntarily surrendered by the mother, who, according to Ms. Craig, is okay with their placements because she was unable to care for them. Another major concern is the mother’s inability or unwillingness to address her housing situation. See State in the Interest of M.A.N., 12-946 (La.App.3d Cir.12/28/12), 106 So.3d 288; State ex rel. J.P.A., 05-1160 (La.App.3d Cir.04/19/06), 928 So.2d 736. At the time the children were removed from her care, the mother was living with her boyfriend. The two were involved in incidents of domestic violence. In fact, the children were removed from the home because of the mother’s arrest and incarceration for one such incident. Thereafter, when she was released from jail, she moved in with her mother. DCFS has objected to this home as unsuitable for the children from the outset. While home repairs have been made to address several DCFS concerns, the more serious issues with the grandmother’s home cannot be remedied: there have been incidents of domestic violence between the grandmother and mother; the grandmother is mentally ill and has a drug-abusing boyfriend; and the home, having only two bedrooms, is not large enough for the children. Notwithstanding assistance from Ms. Craig, the mother has been unwilling and/or unable as of the termination hearing to secure another housing arrangement. Another related concern is that without support or assistance on a day to day basis, the mother will not be able to properly care for the [ ^children. The record also shows that the mother has not complied with her case plan requirement that she attend and successfully complete domestic violence counseling. The trial court erred in finding that DCFS did not establish by clear and convincing evidence the ground for termination provided by La. Ch.C. art. 1015(5). The record establishes the mother’s lack of substantial compliance with her case plan and the lack of a reasonable expectation of significant improvement in her condition in the near future.
We now must determine whether termination is in the best interest of the children. In State ex rel. K.G., 841 So.2d at 762, the Louisiana Supreme Court explained that:
The State’s parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven.
We cannot say that it is in the best interest of the children to keep them in foster care limbo in the hopes that at some point in the future, they can safely be returned to their mother’s care. As noted above, the testimony is uneontradicted that the mother does not possess the ability to *1209 maintain an appropriate, supportive environment for her children. See State ex rel. \mJ.P.A., supra. Furthermore, Regina Craig, DCFS case worker, testified that the children had become very bonded with their foster families and had adjusted well to foster care. She noted that the children had been separated because of aggressive behavior by the eldest child toward the youngest, but that both were thriving in their current placements. The developmental delays that both children had when they entered into DCFS custody have improved since their foster care placement. Furthermore, both families expressed interest in adopting the children. The record indicates that the best interest of the children will be served by termination of the mother’s parental rights and certification of these children for adoption.

Conclusion

For the reasons set forth above, we reverse that portion of the trial court’s judgment relative to the parental rights of Ch.W. and render judgment terminating her parental rights as to C.W. and J.W. and certifying them for adoption.

. The trial court terminated the parental rights of the father; this portion of the judgment was not appealed.

. At that time, the mother had been participating in the Family Services Intervention program .with DCFS since January 2011 in an attempt to keep the children in their home.

. In its brief, DCFS alleges that the mother was allowed to plead guilty to aggravated second degree battery, was placed on felony probation, and was released from jail on October 14, 2011.

. This placement lasted only a few months. The father left the children with a relative and moved, thereafter becoming uncooperative and refusing to work his case plan or communicate with DCFS. He did not keep in touch with his attorney, who could not locate him for the termination hearing.

. This was probably due in part to the testimony of the case worker that the reason DCFS was seeking termination of the mother’s parental rights was because of her limited mental ability/low I.Q., she needed someone in her home on a regular basis to help her care for the children "almost like 24/7”.)