PITMAN, J.
11Chequilla Jackson (“Jackson”) appeals a judgment from the West Monroe City Court terminating her parental rights to L.J. For the reasons set forth herein, the judgment is affirmed.

FACTS

On January 23, 2011, Jackson gave birth to her daughter “L.J.” At birth, L.J. was drug-affected by cocaine and was placed in the custody of the State of Louisiana by an instanter order signed on February 3, 2011. In addition to testing positive for cocaine, Jackson had been diagnosed with bipolar disorder and schizophrenia. According to Louisiana Department of Child and Family Services (“DCFS”) reports, Jackson had been noncompliant with her medication. On March 22, 2011, L.J. was adjudicated as a “child in need of care” and custody was maintained with DCFS. Since that time, L.J. has been living in Mississippi with her great-grandmother, great-grandfather and one biological sister, A.J. Jackson’s parental rights to A.J., who was also born with cocaine in her system, were terminated by the State of Mississippi in January 2012 because of Jackson’s drug addiction.
To assist Jackson in reunification with L.J., in March 2011, the Ouachita Parish DCFS developed a case plan, which was approved by the court. The case plan required Jackson to do the following to prove that she could provide a stable environment for LJ.’s care:
1. Obtain and maintain safe and stable housing that is adequate in size and cleanliness, has working utilities, and contains no safety hazards.
*528 2. Keep food in her home to feed her children.
3. Allow a DCFS caseworker to visit her home twice per month.
1⅞4. Seek classes to assist her with budgeting and financing to assist her managing her bills.
5. Pay $25 per month for child support for L.J.
6. Complete a drug rehabilitation program and follow all recommendations of the rehabilitation staff and counselors.
7. Submit to random drug screens within 24 hours of the request being made or the screen will be considered a positive screen.
8. Seek services at a domestic violence shelter and follow all the rules and guidelines at the shelter, including seeking the treatment she needs.
9. Attend couples counseling with Otis Dewayne Wiley, L.J.’s biological father, if the two decide to stay in a relationship. Follow all recommendations made in couple’s counseling.
10.Attend parenting classes and follow all recommendations of the staff and counselors.
After L.J. was placed in the custody of the DCFS, Jackson continued to fight her drug addiction, but was slow to work on the requirements of her case plan. Jackson’s progress was monitored by a caseworker with DCFS. According to reports in the court record, there were several months when Jackson’s whereabouts were unknown. In July 2011, Jackson explained to DCFS that she was hard to find because she had been living with different friends and had been incarcerated a few times. The case plan allowed for weekly supervised visits with L.J., but Jackson saw L.J. only twice between March and December 2011.
Jackson presented with positive drug screens twice while L.J. was in the care of DCFS and it was recommended that Jackson participate in an inpatient rehabilitation program in Rayville, Louisiana. She entered the Rayville Recovery Program in September 2011, but failed to complete the treatment after being involved in an altercation with another patient and failing to acknowledge her relationship with a fellow patient in the facility, L.J.’s father, Otis DeWayne Wiley (“Wiley”).
|3In January 2012, Jackson moved to Indiana to attempt to repair her relationship with her own mother. At that time, she was pregnant with twins. Jackson moved into a women’s shelter after an argument with her mother. Her pregnancy was determined to be high-risk and she was placed in the hospital on bed rest for six weeks. At the time of her hospitalization, she had not yet completed an outpatient drug rehabilitation program or the parenting classes required by her case plan. One of Jackson’s twins died at birth and the surviving twin (“H. J.”) is currently in Jackson’s care in Indiana, but is being supervised by the Indiana DCFS. Jackson has admitted that Wiley, who is also H.J.’s father, is involved with the care of H.J. and is a regular fixture in her household. Jackson and Wiley maintain a relationship, but have not received the couples counseling required in Jackson’s case plan.
After her move to Indiana, Jackson and H.J. spent three weeks in a shelter before she received help from Area Four, a case management company in Indiana. Area Four located and paid for an apartment for Jackson and H.J. Jackson relied on a number of services from Area Four to help with her housing and with the care of H.J. The assistance from Area Four was scheduled to end in October 2012.
*529 Due to Jackson’s failure to complete the requirements of the court-approved case plan, the State of Louisiana, through DCFS, filed a petition for termination of parental rights and certification for adoption against both Jackson and Wiley on May 18, 2012. At the termination hearing on September 6, 2012, the DCFS caseworker assigned to L.J.’s case testified |4that Jackson admitted to using drugs as recently as December 2011, although she provided two negative drug screens between January and September 2012. Jackson testified that she understood the importance of a rehabilitation program, but then asserted that she would be able to stop the use of illegal drugs on her own without the help of such a program.
During the 19 months that L.J. was in the custody of DCFS, Jackson received two lump-sum disability payments totaling approximately $40,000. That money is being managed by Area Four, since Jackson has not demonstrated the ability to manage her own funds. Despite the requirement that Jackson provide $25 each month to help with the care of L.J., Jackson provided only $100 and a few outfits, according to DCFS reports. At the termination hearing, Jackson herself testified that her contribution for the support of L.J. has been inadequate.
As of the time of the termination hearing, Jackson had failed to complete a drug rehabilitation program, had not attended domestic violence counseling or parenting classes and had not provided any significant contributions on behalf of L.J. while L.J. was in the custody of DCFS.
On September 6, 2012, judgment was rendered in open court terminating the parental rights of Jackson and Wiley, in accordance with Louisiana Children’s Code article 1015(5), which states, in pertinent part:
The grounds for termination of parental rights are:
5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for |fithe safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
A final judgment terminating the parental rights of Jackson and Wiley to L.J. was signed January 3, 2013, and this appeal by Jackson followed. No appeal was filed on behalf of the father, Wiley.

DISCUSSION

Noncompliance with case plan

In her first assignment of error, Jackson claims that the trial court erred in determining that DCFS proved by clear and convincing evidence that she did not substantially comply with her case plan. Jackson admits that she has not completed a drug rehabilitation program, but argues that her two clean drug screens are evidence that she has stopped her drug use. Jackson argues that the only requirement of the case plan she has not fulfilled is the intensive outpatient drug rehabilitation and that all other requirements have been met. She further argues that, absent extenuating circumstances, i.e., her pregnancy with twins that required an extended hospital stay, she would have fully complied. Jackson argues that she has obtained appropriate housing with all utili *530 ties, has been willing to allow home visits from DCFS, has been receiving help with her budget and financial counseling, has a secure income in the form of SSI and food stamps, has submitted to a psychiatric evaluation and has passed two random drug screens on February 8 and June 8, 2012. Further, Jackson argues that DCFS has no proof that she has not acquired adequate food and 1 ficlothing for her children and that she has not been taking her medications as required.
Jackson further asserts that DCFS has no evidence of any substance abuse by her after December 2011. In fact, she states that she has had two clean drug screens since that time. She also points out that Indiana DCFS investigations of her have revealed no drug use and that the Indiana DCFS has found her to be a suitable guardian for the twin child, H.J., who is currently in her custody.
Jackson argues that, without proof of a continuing drug problem and without proof of her failure to satisfy the other requirements in her case plan, there is no persistence of the original conditions that led to L.J.’s removal from her custody.
The State of Louisiana, through DCFS, and the attorney appointed to represent the interests of L.J. argue that Jackson has been wholly non-compliant with her case plan. The State argues that Jackson’s testimony about her last drug use was inconsistent and she has still not completed a drug rehabilitation program. The State argues that it was proven that Jackson has failed to complete any substance abuse treatments, domestic violence counseling or parenting classes or provided any significant contributions on behalf of L.J. while L.J. was in custody of the DCFS.
The State further argues that Jackson has not proven fhat she is capable of maintaining a home or managing her finances on her own without the professional assistance of Area Four or DCFS and without her therapist and psychiatrist. The State contends that Jackson has not ^substantially complied with the case plan and has not shown significant, measurable progress.
In order to terminate parental rights, the state must prove by clear and convincing evidence that the parent is in violation of one of the factors listed in La. Ch. C. art. 1015(5), which requires the state to prove 1) that the child has been removed from the parent’s custody for at least one year, 2) there has been no substantial compliance with the case plan approved by the court and 3) there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future.
A case plan is designed to address the problems which brought a child into care and provide remedies to those problems. Reformation means more than mere cooperation from the parents. Parents should demonstrate significant modification of the behavior that served as the basis of the state’s removal of a child. State in Interest of M.A.S. and R.S., 38,677 (La.App.2d Cir.5/7/04), 873 So.2d 817.
Lack of substantial compliance with a case plan can be evidenced by the parent’s failure to comply with the required program of treatment and rehabilitation services, the parent’s lack of substantial improvement in redressing the problem preventing reunification or the persistence of conditions that led to removal or similar potentially harmful conditions. La. Ch. C. art. 1036(C).
Appellate courts review a trial court’s findings as to whether parental rights should be terminated according to the manifest error standard. In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47.
*531 |8A review of the testimony presented at the termination hearing shows that L.J. has been removed from Jackson’s custody for at least one year. DCFS was granted custody of L.J. in March 2011 and has had continuous custody since that time. L.J. has been living in Mississippi with her great-grandparents, who are qualified foster parents, the majority of her time away from Jackson.
Jackson has failed to comply with her court-ordered case plan in several areas, the most notable being her failure to complete a drug rehabilitation program. Despite several opportunities, Jackson never attended more than three sessions before halting her participation in an outpatient program. L.J. was born with cocaine in her system and Jackson’s substance abuse was the main reason initially cited for removing L.J. from Jackson’s custody, adjudicating L.J. a “child in need of care” and placing her in the custody of DCFS. Jackson has at least a six-year long history of drug abuse. Although she has made some progress, stating that she has provided two negative drug screens and that she has been drug free for several months, we agree with the trial court that the progress is minimal and that there has not been substantial compliance on Jackson’s part to fully complete the requirements of the drug rehabilitation program.
The evidence also showed that Jackson admitted to her continued relationship with Wiley, but they have not attended the eouples counseling or the domestic violence counseling required by the case plan. There is no evidence that Jackson completed the required parenting classes, and she has | stalled to provide financial support for L.J., despite receiving two lump-sum disability payments totaling approximately $40,000.
We find that the trial court did not commit manifest error when it determined that Jackson had not substantially complied with her case plan. This assignment of error is without merit.

Expectation of significant improvement

In her second assignment of error, Jackson argues that the trial court erred in its determination that DCFS proved by clear and convincing evidence that there was no reasonable expectation of significant improvement in Jackson’s condition in the near future.
Jackson argues that evidence of a lack of reasonable expectation of significant improvement in the parent’s condition in the near future must be proven by expert testimony or by an established pattern of behavior. Jackson continues to argue that there was no testimony from a qualified expert presented; and, without a positive drug screen, there is no established pattern of behavior and that the finding that there was no reasonable expectation of significant improvement was improper.
The State and the attorney appointed to represent the interest of L.J. argue that Jackson has failed to make, or show that she is attempting to make, significant changes in her behavior despite having more than 18 months in which to realize the changes and improvements required by her case plan.
A mother’s refusal to comply with the prongs of a case plan developed to reunite her with her children indicates that she has not | ^reformed. State in Interest of C.L.R. v. Russo, 567 So.2d 703 (La.App. 3d Cir.1990). Reformation requires more than just cooperation with agency authorities. Reformation is shown by a significant, substantial indication of reformation, such as altering or modifying in a significant way the behavior which served as the basis for the state’s removal of the child from the home. State in Interest of S.M., et al., 98-0922 (La.1998), 719 So.2d 445.
*532 The best interest of the child must be served by terminating parental rights in order to achieve permanency and stability for that child. State in Interest of D.S.C., S.W.C., and J.S.W. v. J.C.R., M.H.W., and A.R.S., 35,898 (La.App.2d Cir.2/27/02), 811 So.2d 198.
Jackson is now living in Indiana and has secured housing with the help of Area Four, the case management company in Indiana. Area Four also manages Jackson’s money, as it has been determined that she is not yet responsible enough to manage it herself. Jackson relies on Area Four to assist with her housing and with the care of H.J., who is still in her custody. At the time of the termination hearing, Jackson was still under the care of a psychiatrist. She failed to prove that she is capable of maintaining a home on her own without the assistance of Area Four or DCFS and without her therapist and psychiatrist.
Contrary to Jackson’s assertions that there was no evidence of an established pattern of behavior, the evidence shows that, other than the fact that Jackson has housing, not much else in the case plan has been accomplished. For these reasons, the trial court thus determined that there was no reasonable expectation of improvement from Jackson.
_[ijL.J.’s current living situation, with relatives and in the same home as her sibling, is a very positive environment for her. She is thriving and, as the lower court determined, deserves to have a sense of permanency in her life.
Based on the foregoing evidence, we find that the trial court did not commit manifest error in determining that there was no reasonable expectation that Jackson would make substantial improvements in the near future. This assignment of error is without merit.

CONCLUSION

The judgment of the trial court terminating the parental rights of Chequilla Jackson to the minor, L.J., is affirmed. Costs of this appeal are assessed to Che-quilla Jackson.
AFFIRMED.