LOLLEY, J.
| Veronica Thomas appeals a judgment of the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, terminating her parental rights to her minor child, S.A.T. For the following reasons, we affirm the trial court’s judgment.
Facts
On September 15, 2009, Thomas went to the emergency room at E.A. Conway Hospital in Monroe, Louisiana, because she was “aching all over.” With her at the time were her boyfriend, Jonathan Hayden, and her child, S.A.T., who was born on June 19, 2008, and was a little over the age of one at the time.[1] Thomas left the waiting room, leaving her child in Hayden’s care. At that time, Hayden took the child to the restroom, where he proceeded to beat her. The investigation of the matter revealed that the child was observed to have a hematoma on her left temple, bruis *818 ing on her left ear and temple, bruising underneath her right eye, and swelling to her right cheek.
Upon questioning by the Department of Children and Family Services (“DCFS” or “the department”), Thomas claimed that the bruise on S.A.T.’s left ear had been caused three days earlier when she struck her head on a shopping cart. Although Hayden admitted to spanking the child on the buttocks, there were no signs observed of a spanking to that part of her body. Hayden subsequently admitted to striking the child in the face and grabbing her by the arm, because she was crying and needed her diaper changed. He [ 2also admitted to having struck the child the previous day. As a result of the incident, Hayden was charged with one count of cruelty to a juvenile.
In addition to suffering physical abuse as a result of Hayden’s actions, S.A.T. has a myriad of physical and developmental issues that the department discovered Thomas was not attending to. The record shows that S.A.T. had previously been on a PEG feeding tube inserted in her abdomen due to her inability to swallow food. However, when Thomas relocated to Monroe from Houston (where the child was born), Thomas failed to obtain any treatment for S.A.T.’s condition. As a result, S.A.T. had suffered a significant weight loss. The child was determined also to have developmental delays in communication and physical, cognitive, and adaptive skills. At the time of the termination hearing, the child was under the care of a neurologist, occupational therapist, physical therapist, speech therapist, and continued having troubles swallowing when eating and pronouncing her words.
Following the beating by Hayden, on September 15, 2009, an instanter order was issued by the trial court adjudicating S.A.T. as a child in need of care. She was removed from Thomas’s custody and placed in the care and custody of DCFS. At the adjudication and disposition hearing held on December 3, 2009, custody of S.A.T. was maintained by DCFS. Throughout the course of S.A.T.’s case, during which she continuously remained in the custody of DCFS, there were approximately eight case plans developed and approved by the trial court. Initially, DCFS sought as its goal reunification between Thomas and S.A.T. As part of her various case plans, Thomas was required to do the following (among other things): obtain and | .¡maintain stable and safe housing; complete a substance abuse evaluation; submit to random drug screens; complete domestic violence counseling; obtain and maintain employment; submit to a psychological evaluation and follow the recommendations; and, have consistent visitation with her child. Ultimately, due to Thomas’s inability to adhere to the case plan, the department recommended in its report of April 19, 2011, a change in its goal from reunification to termination of parental rights with the adoption of S.A.T. Notably, despite her original medical condition, the department’s final report shows that S.A.T.’s overall health is good and she is progressing well while in the custody of DCFS. On June 25, 2013, the DCFS filed its petition for the involuntary termination of Thomas’s parental rights for grounds as provided in La. Ch. C. art. 1015.
The initial termination hearing was scheduled for October 19, 2013, and Thomas failed to appear although she had been given and received notice. The trial court considered the testimony of the DCFS supervisor assigned to S.A.T.’s case, Letoshia Ross. Thomas was given an opportunity to testify at a later hearing on December 9, 2013, by which point in time her child had been in custody for four years. After the continued hearing, the *819 trial court verbally issued a judgment terminating Thomas’s parental rights to S.A.T. Corresponding written judgments were signed on October 19 and December 9, 2013. This appeal by Thomas ensued.
Discussion
Louisiana Children’s Code article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. State ex rel. 2010-1111 (La.10/19/10), 49 So.3d 345; State 4in Interest of C.V.W., 48,166 (La.App.2d Cir.04/10/13), 113 So.3d 1202. In order to terminate parental rights, the court must find that the state has established at least one of the statutory grounds set forth in article 1015 by clear and convincing evidence. State ex reí. H.A.B., supra. Even upon finding that the state has met its evidentiary burden, a court should not terminate parental rights unless it determines that termination is in the child’s best interest. La. Ch. C. art. 1037(B); State ex rel. H.A.B., supra; State ex rel. C.J.K., 2000-2375 (La.11/28/00), 774 So.2d 107. Whether termination of parental rights is warranted is a question of fact, and a trial court’s determinations will not be set aside in the absence of manifest error. State ex rel. H.A.B., supra; State in Interest of C.V.W., supra.

Grounds for Termination of Parental Rights

Two of Thomas’s assignments of error are related to the grounds for which the trial court terminated her parental rights as to S.A.T. First, she argues that the trial court erred in its determination that DCFS proved by clear and convincing evidence that she did not substantially comply with her case plan. Thomas points out that under La. Ch. C. art. 1015(5), DCFS had to prove no substantial parental compliance with the case plan. However, she claims that there has been complete compliance by her. According to Thomas, she was in complete compliance in March 2011 and. September 2011. She maintains that she was in complete compliance until 2012, when she became “frustrated” with the department and broke off contact with DCFS between January and May 2012. She further argues that ease plans were formulated in September 2012 and September 2013, and she was in substantial compliance. According to Thomas, as of the present, she is in ^substantial compliance, in that she has: housing; legal income through partial employment, one child’s SSI, and S.A.T.’s SSI (if she regains custody); no evidence of drug use or domestic abuse; a strong support system; and, has exercised legal and physical custody of her two-year-old since birth without incident.
Here, the trial court determined that termination of Thomas’s parental rights was warranted under La. Ch. C. art. 1015(5), which provides:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parents’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
Lack of substantial compliance with a case plan can be evidenced by the parent’s failure to comply with the required program of treatment and rehabilitation services, the parent’s lack of substantial improvement in redressing the problem *820 preventing reunification or the persistence of conditions that led to removal or similar potentially harmful conditions. La. Ch. C. art. 1036(C); State v. L.J., 48,341 (La.App.2d Cir.06/26/13), 118 So.3d 526.
Here, there is no question that Thomas put her child in harm’s way when she initially left S.A.T. in Hayden’s care, leading to her abuse. As a result of that physical abuse, along with Thomas’s inability to attend to S.A.T.’s medical condition, the child has been in the department’s custody for four years. DCFS has had in place over these four years numerous case | (¡plans giving Thomas the opportunity for reunification with her child. The record is clear that Thomas lacked substantial compliance with her case plans over much of the four years. Going through the considerations listed in La. Ch. C. art. 1015(5), Thomas did not comply with her case plans, nor did she make substantial improvements for the safe return of her child. The record shows that Thomas was deficient in several areas, some of those being:
• Housing: the case plans clearly show that Thomas moved several times during S.A.T.’s custody with the state, despite the department’s goal that she secure and maintain safe housing.
• Substance abuse: Further, the case plan shows that Thomas has a substance abuse problem, having used powder cocaine, ecstasy, marijuana and alcohol. Thomas admitted she was high on marijuana when S.A.T. was born. Because of her substance abuse, Thomas was required by the DCFS to submit to random drug tests, which she often missed or refused to take. At the hearing, Ross testified that Thomas had not submitted to any drug screenings in 2013.
h* Visitation: The record shows that she missed many family visits, and when she did make the visit, Thomas routinely failed to bring food, clothing or gifts that would have supported S.A.T. Notably, she cut off contact with DCFS between January and May 2012, due to her frustration, resumed visitation in June, but missed July.
• Mental health/domestic violence counseling: Thomas reported having been abused emotionally, physically, and sexually during her life. She was diagnosed with adjustment disorder with mixed anxiety and depressed mood and chronic post traumatic stress disorder. Although she had undertaken some counseling, more was recommended to address her needs, develop tools to resist drug use, and be aware of unhealthy relationships that compromise her and her child’s safety. In the beginning of 2012, Thomas refused to comply with the case plan, and received no counseling. Her counseling efforts throughout have been sporadic.
Thomas’s actions do not represent substantial compliance with the case plan, nor do her actions in any way demonstrate that there would be a significant improvement in her condition. In fact, she has failed to show any trend of improvement. Thus, we find that the trial court did not commit manifest error in determining that Thomas had not substantially complied with her case plan as required under La. Ch. C. art. 1015(5). This assignment of error is without merit.
In another assignment of error, Thomas argues that the trial court |serred in determining that DCFS proved by clear and convincing evidence that Thomas placed her child in the department’s custody under circumstances demonstrating an intention to permanently avoid parental responsibility. We disagree.
In addition to determining that Thomas did not comply with her case plan, *821 the trial court also determined that Thomas’s parental rights were terminated for her failure to support and maintain contact with her child, an independent basis for termination of parental rights under La. Ch. C. art. 1015(4), which states:
(4) Abandonment of the child by placing him in the physical custody of a non-parent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child’s parent continue to be unknown.
b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by ■visiting him or communicating with him for any period of six consecutive months.
Here, the record shows that Thomas has failed to provide even minimal support on behalf of S.A.T. According to DCFS, Thomas was ordered to pay $100.00 a month in child support; at the time of the hearing, she had an arrearage of over $2,000.00. DCFS also submits that Thomas brought food and/or gifts to only two visits. Once, she brought S.A.T. a fast-food child’s meal (even though S.A.T. was unable to chew solid food). | (Another time, she brought a cake and gifts for the child’s birthday, but did not allow her to take them home. We recognize that Thomas has her own difficulties; however, the record does not indicate that during the four years of assistance by the department Thomas has made a conscientious effort to make changes in her life that would allow for reunification. It is clear that Thomas has taken little to no action in furtherance of the intent to avoid having her parental rights terminated. Accordingly, this finding by the trial court also was not in error.

Best Interest of the Child

Finally, in another assignment of error Thomas maintains that the trial court erred in its determination that DCFS proved by clear and convincing evidence that termination of her parental rights was in S.A.T.’s best interest. According to Thomas, even if DCFS had proven grounds for termination, the trial court must still determine that termination is in the best interest of the child. Here, she argues DCFS did not make that showing. According to Thomas, DCFS does not have a plan for permanent placement of S.A.T. Thomas maintains that the child has an option for placement with her. She also states that the child is beginning to bond with her, and she knows that she has a younger sister. Thomas believes it is safe for the child to be returned to her custody.
 The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for the child’s physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and | ^responsibilities and to achieve permanency and stability for the child. State ex rel. S.M.W., 2000-3277 (La.02/21/01), 781 So.2d 1223; State in the Interest of C.V.W., supra. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with *822 the parents to be terminated. As such, the primary concern of the courts and the state remains to secure the best interest for the child, including the termination of parental rights if justifiable grounds exist and are proven. Id.
When S.A.T. entered the department’s care, she was a malnourished one-year-old requiring a feeding tube because she was unable to swallow food-this in addition to having been physically abused by Hayden. Further, at that time when she was taken into custody, S.A.T. had not been treated by a medical professional in over five months. The record shows that during the time of her custody with DCFS, the child has thrived and is speaking more, being more responsive, and is generally happy. Ross testified that it would be in S.A.T.’s best interest to have Thomas’s parental rights terminated, because Thomas cannot provide her the stability she needs. Clearly, the best interest of S.A.T. calls for her to have permanency in her life. Thomas has been given four years to work out her case plan, and we agree with DCFS that the child should not be forced to wait indefinitely for Thomas to get herself together and complete her plan. The length of time might not have been an issue if Thomas had demonstrated a trend of improvement — even slowly. She failed to do so. In this case, termination of parental rights was clearly in the best interest of the child, and the trial |, ¡court’s determination on this issue was not in error.
Conclusion
Considering the foregoing, we affirm the trial court’s judgment terminating the parental rights of Teronica Thomas so to her minor child, S.A.T. No costs are assessed in this appeal.
AFFIRMED.

. Hayden is not S.A.T.’s father. Initially, Thomas identified someone as the child’s father, but he was proven not to be through DNA testing. A man subsequently named as father has never been located despite efforts by DCFS and is represented herein by a court-appointed curator ad hoc.