STEPHENS, J.
*526 A.J.M. appeals a judgment by the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, terminating her parental rights to the minor child, B.A.T. For the following reasons, we affirm the trial court's judgment.
FACTS
This termination of parental rights proceeding involves B.A.T., a female child born on December 18, 2015. The parents are A.J.M. and S.T., who were residents of Haughton, Louisiana.[1] According to the affidavit in support of an instanter order, on September 6, 2016, the State of Louisiana, Department of Children and Family Services (the "State") received a report that the City of Haughton Police needed assistance regarding the minor children, B.A.T. and L.M. (the child of A.J.M. and another father not involved in this incident).[2] Police responded to the house in Haughton pursuant to a domestic violence call: A.J.M. and S.T. were fighting and strangling each other in a bedroom. The children were present in the house, but were not injured in the altercation. Also present was A.J.M.'s sister, Elizabeth Hall. The children were allowed to go with A.J.M.'s father, their grandfather, at her request.
The day after the incident, both A.J.M. and S.T. tested positive for amphetamines and methamphetamines. S.T. was also positive for marijuana. B.A.T. tested positive for methamphetamines.
Ultimately, A.J.M. pled guilty to the charge of domestic abuse battery-strangulation-1st Offense in Criminal Docket No. 220,857 of the Twenty-Sixth Judicial District Court, Parish of Bossier, Louisiana. During the entire time B.A.T. was in the State's custody, A.J.M. was incarcerated, and she was not released until the week prior to the termination hearing.
Shortly after the incident, Elizabeth's children disclosed that A.J.M. had thrown B.A.T. on the floor, and a detective for the Bossier Parish Sheriff's Office interviewed Elizabeth regarding the accusation. Elizabeth confirmed the accusation, and B.A.T. was taken to University Health Shreveport hospital for a medical examination. According to the State, a skeletal examination showed a healed fracture of the left arm which appeared to be about two months old. B.A.T.'s parents later claimed to have no knowledge of the injury or how it happened.
On September 14, 2016, on the basis of neglect/lack of adequate supervision, dependency, abuse/physical abuse, and bone fracture, the State requested B.A.T. and L.M. be removed from the parents' custody and the State be granted temporary custody. At the continued custody hearing held September 19, 2016, an instanter removal order was entered, and the State was granted custody of the children.
The State filed its petition on October 17, 2016, alleging the children to be in need of care in accordance with La. Ch. C. art. 606, and outlined the facts stated herein. A.J.M. denied the petition, which according *527 to court minutes was entered on October 31, 2016. The proceeding was called for adjudication on November 21, 2016, and the State's petition was offered without objection in lieu of live testimony. B.A.T. was found to be a child in need of care and remained in State's custody.
The State filed its initial report on December 5, 2016, in anticipation of the upcoming disposition hearing. At the disposition hearing on December 12, 2016, the State offered its report without objection. The State's plan called for reunification and case plan goals for A.J.M. included:
• obtain and maintain housing that is physically safe and meets the basic needs of her family-a home that is clean and has electricity, running water, and food;
• have a legal source of income and resources to meet the needs of her child;
• support her child and pay $100.00 per month toward that support;
• keep the State informed of her whereabouts at all times and notify the State within three days if her residence should change;
• participate in a substance abuse assessment and follow all recommendations if deemed necessary;
• participate in random drug screen by the State;
• participate, complete, and demonstrate the skills that she has learned in her parenting classes, which help her understand and cope effectively with her children;
• attend all court hearings and scheduled visits with her child and other appointments in regards to her child;
• attend regularly scheduled family visits with her child; and,
• complete domestic violence treatment and anger management counseling.
A judgment of disposition was entered adopting the case plan and ordering A.J.M.'s compliance. Notably, the judgment stated that failure to comply with the case plan could result in the State "filing a proceeding to terminate parental rights within one year of the child's removal from the home, or sooner with leave of the Court."
The case was set for a permanency hearing and case review on March 6, 2017; however, the hearing was continued when the State failed to file its report and the caseworker failed to arrive for court. The State filed its report on March 7, 2017, and on March 13, 2017, the case was called for review. A permanency/case review judgment was entered on June 22, 2017, which adopted the report case plan goal of reunification.[3] A case review hearing was set for August 28, 2017.
However, on July 25, 2017, the State filed an authorization to file termination of parental rights petition and its petition for termination of parental rights, pursuant to La. Ch. C. art. 1004(D). The State's case plan filed on August 17, 2017, adopted a case plan goal of adoption. The trial court proceeded with the hearing date previously set for case review. A.J.M. had been released from jail the previous week and attended the hearing at which she testified. Judgment terminating A.J.M.'s parental rights to B.A.T. was rendered on September 26, 2017, pursuant to La. Ch. C. arts. 1015(5)(b) and (c) and 1015(6). This appeal ensued.[4]
*528 DISCUSSION
In State ex rel. H.A.S. , 2010-1529 (La. 11/30/10), 52 So.3d 852, 859 (quoting State ex rel. K.G. and T.G. , 2002-2886 (La. 3/18/03), 841 So.2d 759, 762 ) the Louisiana Supreme Court stated:
In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing those interest[s], the courts of this state have consistently found the interest of the child to be paramount over that of the parent.
Louisiana Ch. C. art. 1015 sets forth eight grounds for termination of parental rights. Although the State need only establish one ground for termination, the trial court must also find that the termination is in the best interest of the child in order to meet the statutory requirement of La. Ch. C. art. 1035(A), which requires that grounds for termination be proven by clear and convincing evidence. Here, A.J.M.'s parental rights were terminated pursuant to La. Ch. C. art. 1015(5)(b) and (c) and (6), which state:
(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
* * * *
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
(6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.
Whether termination of parental rights is warranted is a question of fact, and a trial court's determinations will not be set aside in the absence of manifest error. State ex rel. H.A.B. , 2010-1111 (La. 10/19/10), 49 So.3d 345 ; State in Interest of S.A.T. , 49,143 (La. App. 2 Cir. 5/14/14), 141 So.3d 816, 819. In a manifest error review, it is important that the appellate court not substitute its own opinion when it is the trial court that is in the unique position to see and hear the witnesses as they testify.
*529 State in Interest of E.M. , 51,511 (La. App. 2 Cir. 6/2/17), 224 So.3d 1122, 1128 ; State in Int. of N.C. , 50,446 (La. App. 2 Cir. 11/18/15), 184 So.3d 760.
Timeliness of Termination
In her first assignment of error, A.J.M. argues that the trial court erred in conducting a termination of parental rights hearing when she did not have the benefit of a permanency hearing as provided by La. Ch. C. art. 702, which states in pertinent part:
A. The court shall conduct a permanency hearing, which shall consider in-state and out-of-state permanent placement options for the child, within thirty days of a judicial determination pursuant to Article 672.1 that reunification efforts are not required.
A.J.M. submits that no such hearing was held in these proceedings, which was error by the trial court. We disagree.
The State maintains a permanency hearing was not required under art. 672.1, because the trial court had already authorized the State to file the petition for termination in its order filed July 25, 2017. Louisiana Ch. C. art. 672.1 states:
A. At any time in a child in need of care proceeding when a child is in the custody of the department, the department may file a motion for a judicial determination that efforts to reunify the parent and child are not required.
B. The department shall have the burden of demonstrating by clear and convincing evidence that reunification efforts are not required, considering the health and safety of the child and the child's need for permanency.
C. Efforts to reunify the parent and child are not required if a court of competent jurisdiction has determined that:
(1) The parent has subjected the child to egregious conduct or conditions, including but not limited to any of the grounds for certification for adoption pursuant to Article 1015.
* * * *
D. If the court determines that reunification efforts are not required, it shall document that determination by written findings of fact. A permanency hearing, which considers in-state and out-of-state permanent placement options for the child, may be conducted immediately and shall be conducted within thirty days after the determination.
(Emphasis added).
As of March 13, 2017, according to court minutes, reunification was still the goal, and the case was set for review and permanency hearing on August 28, 2017. However, on July 25, 2017, the State filed a petition for termination, and on July 31, 2017, (according to trial court minutes) A.J.M. entered a denial. The trial court maintained the court date of August 28, noting that the termination of parental rights adjudication, case review, and permanency hearing would be considered that date. A report and case plan was filed August 17, 2017, wherein the case plan goal was changed to adoption. We acknowledge that the State's action in proceeding with its petition for termination seems irregular in that the permanent plan of reunification was still in place, and the plan was not changed to adoption until afterward. However, such a step is not prohibited under the Children's Code, nor was a permanency hearing necessary or required under art. 702 in light of art. 672.1.
Furthermore, we agree with the State's argument that in this case the filing of the petition to terminate was proper under La. Ch. C. art. 1036.2, regarding incarcerated parents, which states in pertinent part:
A. An incarcerated parent of a child in the custody of the department shall provide *530 a reasonable plan for the appropriate care of his child other than foster care. Failure by the incarcerated parent to provide an appropriate plan may result in an action to terminate his parental rights.
B. Within thirty days of notification that a parent of a child in foster care is incarcerated in this state, a representative of the department shall visit the incarcerated parent and give written notification to the incarcerated parent of his duty to provide a reasonable plan for the appropriate care of the child. The department, at that time, shall obtain information regarding the plan, including the names, addresses, cellular numbers, telephone numbers, and other contact information of every potential suitable alternative caregiver.
C. The incarcerated parent shall provide the department with the required information in writing within sixty days of receipt of the notification form. During that period, a parent may submit additional information or names of other caregivers using the form attached to the notice. The department shall provide the parent with a stamped, self-addressed envelope for this purpose. No additional caregiver names will be accepted after the expiration of the sixty-day period, as evidenced by a postmark.
D. The department shall conduct an assessment of the persons named as caregivers by the incarcerated parent and shall notify the parent within ten days of completion of the assessment whether the persons named are willing and able to offer a wholesome and stable environment for the child [.]
(Emphasis added). The record indicates that A.J.M. signed the appropriate form on May 17, 2017, acknowledging notice and the possibility that her parental rights could be terminated and B.A.T. adopted if A.J.M. did not provide a reasonable plan for appropriate care during her incarceration. The form notified A.J.M. she had sixty days from the receipt of notice. A.J.M. did timely indicate potential individuals to care for B.A.T.; however, after consideration by the State, none of those individuals were deemed appropriate and were determined ineligible. Therefore, because A.J.M. did not provide a plan for alternative care, the State was authorized to proceed with termination, and the trial court did not err in allowing such. We conclude that A.J.M.'s assignment of error has no merit.
Evidence for Termination
The grounds for the State's petition for termination were pursuant to La. Ch. C. art 1015(5)(b) and (c) and 1015(6), and the trial court cited those subsections of article 1015 in terminating A.J.M.'s parental rights. On appeal, A.J.M. argues the trial court erred in concluding the State proved by clear and convincing evidence all elements required under those sections of the article. We disagree and find that the clear and convincing evidence showed A.J.M. did not comply with the case plan nor had a reasonable expectation of significant improvement in the near future.
Pursuant to the clear and convincing proof standard, the state must show that the parent's failure to comply with the enumerated condition is highly probable. State ex rel. B.H. v. A.H. , 42,864 (La. App. 2 Cir. 10/24/07), 968 So.2d 881, 885. Lack of parental compliance with a case plan may be demonstrated by the parent's: failure to attend scheduled visitations with the child; failure to communicate with the child; failure to keep the department apprised of the parent's whereabouts; the repeated failure to comply with the required program of treatment; and, the persistence of conditions that led to removal *531 or similar harmful conditions. La. Ch. C. art. 1036. Lack of reasonable expectation of significant improvement in the parent's conduct in the near future may be proved by: any physical or mental illness, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm; or, any other conduct that reasonably indicates that the parent is unwilling or unable to provide an adequate permanent home for the child. La. Ch. C. art. 1036(D).
The issues of parental compliance with a case plan and the reasonable expectation of significant improvement in the parent's condition and conduct are questions of fact. State ex rel. T.J.L.M. , 45,517 (La. App. 2 Cir. 6/23/10), 41 So.3d 1268, 1272.
Here, the primary reason for A.J.M.'s termination was her lack of compliance with the case plan. In fact, A.J.M. testified at the hearing that she had completed none of the case plan. A.J.M. also testified that she had not seen B.A.T. since the date of the incident involving S.T. Other than her self-serving letter to the trial court, she offered no evidence of her involvement or interest in B.A.T.'s life. As reflected by A.J.M.'s testimony, the trial court noted that she had no "real job" other than working in some capacity for her father; had no permanent residence other than with her father; or possessed no ability to care for and nurture the child. We believe the trial court's assessment was reasonable, and further note that A.J.M. did not show any proactive steps toward any sort of relationship with B.A.T. while she was incarcerated or in the week before the hearing. Notably, A.J.M. was drug-free on the day of court, and she recounted attending AA substance abuse while in jail (offering no proof). But A.J.M. did not show that once released she had made any steps toward her sobriety. In fact, considering the actions she took in the week preceding the hearing (socializing with friends and family at late hours, engaging in social media, initiating contact with S.T.), her conduct does not indicate that she is willing or able to provide an adequate permanent home for this child. Finally, in A.J.M.'s own assessment of herself, she cannot provide for herself, let alone her child.
Further, A.J.M.'s argument is misplaced that just cause prevented her from providing for B.A.T., because she was incarcerated. Imprisonment is not an excuse to escape parental obligations. State In Interest of B.J. , 48,857 (La. App. 2 Cir. 1/15/14), 135 So.3d 777, 783. Incarceration is not a defense to failure to support or maintain contact with one's children in a termination-of-parental-rights case, particularly because incarceration results from one's own actions. Id.
The trial court properly concluded that the clear and convincing evidence showed noncompliance with the State's case plan and no reasonable expectation of significant improvement in A.J.M.'s condition in the near future. Her assignment of error on this issue is meritless.
Best Interest of the Child
Finally, A.J.M. argues in her fourth assignment of error that the trial court erred in concluding the State proved by clear and convincing evidence that it was in B.A.T.'s best interest to have her parental rights terminated. She argues that great care and caution should be used in terminating parental rights because doing so is the most severe and drastic action a State can take. We agree that terminating parental rights is a severe and drastic action. However, A.J.M. does not provide any specific reasons why termination is not in *532 B.A.T.'s best interest, but only argues the trial court's action should be scrutinized very carefully.
While the parents have an interest in the continuing companionship, care and custody of their children, the children have a profound interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable and continuous relationships found in a home with proper parental care. State ex rel. J.M., 2002-2089 (La. 1/28/03), 837 So.2d 1247. In balancing these interests, the courts have consistently stated that the interests of the children are paramount. Id.
B.A.T.'s short lifetime with A.J.M. was filled with chaos, violence, and drug abuse. B.A.T. lived in a house with a multitude of children (her half-brother and cousins) and adults (her unmarried parents and her aunt); her parents argued repeatedly and engaged in domestic abuse against each other; drug abuse was rampant in the home (so much so that B.A.T. tested positive for methamphetamines herself); and, she suffered an undiagnosed fracture of her arm. Her mother allegedly had no idea how that fracture occurred. At worst, and as described, A.J.M. inflicted the injury by throwing the child; at best, she caused the injury through neglect of her child. Under either scenario, the injury went untreated.
It is evident A.J.M. has no bond with B.A.T., and A.J.M. admits she has been a horrible mother. The record clearly indicates that A.J.M. is void of any maternal instinct. Upon being released from jail, her first actions were to acquire a cell phone, activate her Facebook account, and have a coming home get-together with her friends and sister. In the days preceding the hearing, she made no overtures to the State regarding her child, her sobriety, or her parenting. And though she articulated general plans for her future (i.e. , obtaining a GED and continuing her education), there is no evidence she has taken actual steps toward furthering those goals. Finally, the foster parents have had B.A.T. since April 2017, providing a stable environment of love and security. They expressed a desire to adopt B.A.T. Clearly, the best interest of B.A.T. is served by terminating A.J.M.'s parental rights to B.A.T. and allowing this child the chance of a secure, drug-free, and violence-free life.
CONCLUSION
Acknowledging that the termination of a parent's rights to her child is a most severe and drastic outcome, nonetheless, in this case, the termination of A.J.M.'s parental rights as to her child B.A.T. was not manifestly erroneous. The ruling was clearly in the best interest of this child, and we affirm the trial court's judgment. Costs in this matter are assessed to A.J.M. as allowed by La. C.C.P. art. 5186.
AFFIRMED.

Although S.T. is listed as B.A.T.'s father on her birth certificate and he executed an acknowledgement of paternity affidavit upon her birth, DNA testing does not establish his paternity of the child. The State later filed a putative father registry certificate with its petition for termination, certifying that a putative father for B.A.T. had not been named.

Custody of L.M. was vacated to his father, and he was no longer a subject of these proceedings.

The State submits that the judgment was erroneously "rendered" March 6, 2017, when, in fact, that hearing was continued and actually occurred on March 13, 2017.

S.T.'s parental rights were also terminated, but he does not appeal.