# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1530

## STATE OF LOUISIANA IN THE INTEREST OF H.A.S. AND C.W.C.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-20070410A&B
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.

**REVERSED.**

**Lloyd Dangerfield**
**Attorney at Law**
**703 E. University Ave.**
**Lafayette, LA 70503**
**(337) 232-7041**
**Counsel for Appellee:**
**J. A. S.**

**Vivian Veron Neumann**
**Attorney at Law**
**P. O. Box 2220**
**Lafayette, LA 70502**
**(337) 261-0079**
**Counsel for Appellee:**
**H. A. S.**
**C. W. C.**

**Diane Elaine Cote**
**825 Kaliste Saloom Road**
**Brandywine I, Room 218**
**Lafayette, LA 70508**
**(337) 262-1555**
**Counsel for Appellee:**
**State of LA., Department of Social Services**

**Allyson Claire Melancon Prejean**
**Attorney at Law**
**P. O. Box 3862**
**Lafayette, LA 70502**
**(337) 288-4028**
**Counsel for Appellant:**
**S. S. S.**

**Keith P. Saltzman**
**Anderson & Dozier**
**P. O. Box 82008**
**Lafayette, LA 70598-2008**
**(337) 233-3366**
**Counsel for Appellee:**
**C. J. C.**

**Michelle Breaux**
**Assistant DA - 15th JDC**
**P. O. Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**Counsel for Appellee:**
**State of Louisiana**

**Casa Coordinator**
**Casa of Acadiana**
**1819 W. Pinhook Rd., Suite 330**
**Lafayette, LA 70508**
**(000) 000-0000**
**Counsel for Appellee:**
**Casa of Acadiana**

**SAUNDERS, Judge.**

Herein, we address whether the trial court erred in terminating the parental rights of the mother of two minor children based upon noncompliance with a case plan and a lack of reasonable expectation of significant improvement in the mother's conduct or condition. For the following reasons, we reverse the ruling of the trial court.

**FACTS AND PROCEDURAL HISTORY:**

The Appellant, S.M.S.S., is the biological mother of the minor children H.A.S. and C.W.C. The Department of Social Services, Office of Community Services (OCS) obtained temporary custody of the children on February 15, 2007, based on neglect and inadequate supervision and pursuant to a Instanter Order. They were subsequently adjudicated Children in Need of Care by a judgment rendered on March 13, 2007, and have remained in the custody of the State.

On March 23, 2009, OCS filed a Petition for Termination of Parental Rights and Certification for Adoption. A trial on the matter was held from August 31, 2009 through September 2, 2009. The trial judge granted the petition terminating the Appellant's parental rights, and the judgment was signed on October 15, 2009.

The Appellant has appealed the judgment and asserts the following assignments of error:

**APPELLANT'S ASSIGNMENTS OF ERROR:**

1. The trial judge's finding that OCS established by clear and convincing evidence that Shanna failed to substantially comply with her case plan is not supported by the record, is manifestly erroneous, is clearly wrong and must be reversed.

2. The trial judge's finding that OCS established by clear and convincing evidence that there is no reasonable expectation of significant improvement in Shanna's condition and/or conduct in the near future is not supported by the record, is manifestly erroneous, is clearly wrong and must be reversed.

3. The trial judge's finding that termination of Shanna's parental rights is in the best interest of the children is not supported by the record, is manifestly erroneous, is clearly wrong and must be reversed.

**LAW AND DISCUSSION ON THE MERITS:**

The standard of review to be applied by this court was set out by our supreme court in *Stobart v. State, through Department of Transportation and Development*, 617 So.2d 880 (La.1993) (citations omitted) (alteration in original).

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
>
> > 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
> >
> > 2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
>
> . . . .
>
> This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."

This court has long recognized the great importance of a parent's constitutionally protected liberty interest in the care, custody, and management of his/her children and the great deference and protection afforded to that right under the law. *State ex rel. V.F.R.*, 01-1041 (La.App. 3 Cir. 2/13/02). 815 So.2d 1035, *writ denied*, 02-0797 (La. 4/12/02), 813 So.2d 412; *In re J.K.*, 97-336 (La.App. 3 Cir. 10/29/97), 702 So.2d 1154.

In *State ex rel. J.A.*, 99-2905, p. 9 (La. 1/12/00), 752 So.2d 806, 811, our

-2-

supreme court noted that, "the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration."

The State sought termination of Appellant's parental rights based on La.Ch.Code art. 1015(5). The article reads as follows:

> Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which have been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

The article sets out three requirements for the termination of parental rights: (1) the passage of one year's time, (2) the lack of substantial compliance with a case plan approved by the court, and (3) the lack of a reasonable expectation of significant improvement in the near future.

The State bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence. La.Ch.Code art. 1035. This court recognizes that the first prong of the test has been satisfied, and we will now address prongs two and three.

<u>Substantial Compliance</u>

Louisiana Children's Code Article 1036(C) sets forth the evidence which may prove, separately or combined, a lack of substantial compliance with the case plan as required by Article 1015(5). The article reads, in pertinent part:

> C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:

. . . .

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

La.Ch.Code art. 1036(C).

With regard to Appellant's case plan, we will address each component individually.

**Day-to-Day Parenting:** Here, Appellant is expected to engage in age-appropriate interaction with the children and to learn new parenting lessons. Appellant has enrolled in and completed multiple parenting classes and has maintained regular visitation with the children. There is nothing in the record or argued in briefs that would suggest that Appellant is not in compliance with this component of her case plan.

**Health Issues/Mental Health:** The primary concern under this category in this case is the mental health and stability of Appellant. She is required to provide OCS with a list of her prescribed medications and dosages and must see her doctor for follow-ups and medication management. Dr. Ed Bergerson did an initial evaluation on Appellant in April of 2007, and found that she needed to receive treatment and counseling. From that time forward, Appellant has been receiving treatment from Dr. Susan Uhrich. Dr. Uhrich has treated Appellant for post traumatic stress disorder, obsessive compulsive disorder, and partial complex seizure disorder. She has also managed Appellant's medications. Dr. Uhrich has not provided any sort

of psychological counseling to Appellant. Despite not providing evidence of any psychological counseling, we find that Appellant has taken sufficient steps toward controlling and bettering her physical and mental health. Accordingly, we find that she has substantially complied with this aspect of her case plan.

**Substance Abuse:** Because of her history of drug abuse, Appellant's case plan called for her to live a clean and drug free life. She was required to complete an in-patient substance abuse treatment program, follow the after care recommendations of the treating clinicians, and submit to random drug screens. The record reveals that Appellant attended and completed an in-patient treatment program at Southeast State Hospital and provided OCS with verification of the program. Thereafter she enrolled in an aftercare program at Celebrate Recovery.

Appellant has complied in submitting to random drug screens, but the results of those screens have come back positive for various narcotics. On multiple occasions, the screens have shown a positive test for cocaine. However, because of the many prescription medications Appellant has been taking over the period, it is unclear to what degree Appellant has deviated from her case plan. The State notes that along with testing positive for cocaine, Appellant also tested positive for benzodiazepine, opiates, and barbiturates. The record indicates that all three of these substances can be found in the prescription medication that Appellant has been taking in connection with treatment for a shoulder injury. For this reason, this court is more concerned with the tests that suggest cocaine use.

Appellant has tested positive for cocaine as recently January of 2009. Appellant admits to having a relapse in November of 2007, thus explaining the positive test in February of 2008. However, she is adamant that she has been clean

ever since. While she did test positive for cocaine in January of 2009, a test taken at a different clinic during the same week showed a negative result for cocaine. Furthermore, Dr. Uhrich testified at trial that she would have noticed had Appellant resumed using cocaine and that she saw no signals that would indicate a relapse.

While there is still a great level of concern with regard to Appellant's drug use, this court is encouraged by her progress in this area. In completing an in-patient program and continuing treatment in an aftercare program, we find that Appellant has displayed considerable effort in overcoming her problems. Accordingly, we find that she has substantially complied with this element of her case plan.

**Housing/Food/Basic Needs:** Here, Appellant is required to maintain basic shelter and related services and to provide OCS with verification thereof. Appellant has maintained housing and uninterrupted utilities since July of 2007, and there is nothing in the record to suggest that she is not in compliance with this aspect of her case plan.

**Employment:** Here, Appellant is required to maintain steady employment. Appellant was employed at Home Furniture from June 2008 through February 2009. Because of conflicts between her work schedule and the visitation schedule with her children, Appellant left her employment with Home Furniture and began work with Brown's Furniture in March of 2009. She asserts that she ended her employment with Brown's Furniture in connection with an incident of sexual harassment perpetuated against her by a co-worker. Since leaving Brown's Furniture, Appellant has been doing sub-contract work in the areas of painting, flooring, and plumbing. We find that Appellant has sustained steady employment and, thus, has complied with this aspect of her case plan.

In reviewing the record and evidence presented to the trial court, we find that the weight of the evidence overwhelmingly suggests that Appellant was in substantial compliance with her case plan. As the State was faced with the heavy burden of showing by clear and convincing evidence that Appellant was not in compliance, we find that the ruling of the trial court in this regard was clearly wrong and manifestly erroneous.

<u>Reasonable Expectation of Improvement</u>

We have already determined that the trial court committed manifest error in finding that Appellant had failed to comply with her case plan. Nonetheless, we will continue with our discussion of all the elements of Article 1015(5).

Louisiana Children's Code Article 1036 (D) sets forth the evidence sufficient to prove the lack of any reasonable expectation of significant improvement in the parent's conduct or condition in the near future. It provides, in pertinent part:

> (1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
>
> . . . .
>
> (3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

*Id*.

We note that in *State in the Interest of L.L.Z. v. M.Y.S.*, 620 So.2d 1309, 1317 (La.1993), our supreme court found that "a reasonable expectation of reformation is found to exist if the parent has cooperated with state officials and has shown improvement, although all of the problems that exist have not been eliminated." We

find this language to be particularly significant to the case at issue. While it is true that Appellant has not resolved all of the problems that have plagued her in the past, particularly her failure to engage in psychological counseling and her struggles with cocaine addiction, it is clear that she has made great strides in becoming a better parent and citizen and that she has been notably cooperative with state officials throughout this process. Furthermore, as we have already mentioned, this court has been greatly encouraged by Appellant's progress in completing an in-patient drug rehabilitation program at Southeast State Hospital and in continuing her aftercare treatment through Celebrate Recovery.

In light of the Appellant's continued cooperation with OCS and her considerable progress in bettering herself and creating a suitable environment for her children, we find that the State has failed to prove by clear and convincing evidence that there is no reasonable expectation of significant improvement in Appellant's conduct or condition. Accordingly, we find that the trial court was manifestly erroneous in its determination.

**CONCLUSION:**

Due to the serious and extreme nature of the termination of parental rights and in light of the progress shown by Appellant, this court finds that the trial court erred in terminating Appellant's parental rights based on a lack of substantial compliance with her case plan and no reasonable expectation of significant improvement in the Appellant's conduct or condition in the near future. All costs of this appeal are assessed against the Appellee.

**REVERSED.**