STEPHENS, J.
CKD, the father of the minor children ALD and LSD, appeals a judgment of the Caddo Parish Juvenile Court, Louisiana, terminating his parental rights. For the following reasons, we reverse the trial court's judgment and remand with instructions.
FACTS
On May 4, 2016, the minor child ALD was removed from the home of his mother, NML.[1] ALD's biological father is CKD, the appellant in this appeal. Initially, it was alleged that NML and CKD were using methamphetamine and other drugs, as well as engaging in domestic abuse of each other. This behavior, along with a chaotic lifestyle, made NML and CKD unable to provide a safe and appropriate environment for the minor child. Additionally, ALD, who was one year old at the time, tested positive for methamphetamine during the course of the investigation.
On May 31, 2016, the Department of Children and Family Services for the State of Louisiana ("DCFS") filed its petition in which it alleged that ALD was a child in need of care ("CINC"). On June 10, 2016, during the course of these proceedings, NML gave birth to LSD, also CKD's child. At the trial on July 13, 2016, the parents stipulated that ALD was in need of care. The parents were drug-tested, and both tested positive for methamphetamine. LSD, a one-month-old infant, also tested positive for methamphetamine. On August 23, 2016, DCFS filed its petition regarding LSD, and that child was adjudicated a CINC.
DCFS developed a plan for rehabilitation of the parents, which was approved by the trial court.[2] The case plan called for CKD to obtain safe and stable housing, complete random drug testing and substance abuse treatment, obtain a legal source of income, and successfully attend and complete parenting classes and anger management. Notably, from the commencement *557 of the case, both NML and CKD had ongoing problems with substance abuse. In fact, as late as November 2017, CKD tested positive for cocaine and drug metabolites.
Attempting to maintain the children with family members, DCFS initially placed the children with CKD's mother, DD. In May 2017, DCFS received reports that CKD (and maybe NML) were also living with DD, and that perhaps DD was using drugs while caring for the children. NML, DD, and CKD were all drug-tested, and CKD's test came back positive for methamphetamines, cocaine, benzodiazepines, and marijuana. DD's drug-test was positive for benzodiazepines, cocaine, and marijuana. Unfortunately, both the children tested positive for methamphetamines and cocaine at that time. As a result, DCFS removed the children from DD's home and placed them in foster care.
Afterwards, according to testimony at the trial, NML was incarcerated and CKD's location became unknown to DCFS. The department maintains that between May and November 2017, CKD was noncompliant with his case plan: he made no contributions to the children's care, stopped visiting them, and made no effort for services. DCFS attempted to contact him at his last known address, but the house appeared abandoned. His family claimed not to know his whereabouts.
DCFS filed a petition to terminate both parents' parental rights on October 9, 2017. NML filed a motion to grant guardianship to her uncle, Dan Linnell, and the matters were consolidated for a December 11, 2017, trial. During a two-day trial, the trial court heard testimony and considered evidence on both issues, and ultimately entered judgment denying NML's motion and terminating both NML's and CKD's parental rights.[3] The trial court stated that CKD's parental rights were terminated pursuant to La. Ch. C. art. 1015(6). CKD filed a timely motion for new trial, which was denied. Only this appeal by CKD ensued-neither NML nor the children appeal the judgment.
DISCUSSION
In related assignments of error, CKD argues the trial court erroneously determined that DCFS proved its case for terminating his parental rights on the basis of La. Ch. C. art. 1015(6) and in the best interest of the children. Specifically, CKD argues that in order to successfully terminate his parental rights under art. 1015(6), DCFS had to prove three elements: (1) it had been one year since the children had been removed; (2) there had not been substantial compliance with the case plan for services; and, (3) there is no reasonable expectation of significant improvement in his condition or conduct in the near future. CKD concedes one year has elapsed since the children were removed from his custody; however, he argues that he has complied with several aspects of his case plan, which in the totality of circumstances, amounts to "substantial parental compliance" on his part. He also argues that DCFS failed to prove he lacked a reasonable expectation of significant improvement. He also maintains that DCFS failed to prove that termination of his parental rights was in the children's best interest. Considering the particular facts of this case, we agree.
Whether termination of parental rights is warranted is a question of fact, and a trial court's determinations will not *558 be set aside in the absence of manifest error. State in Interest of T.P. , 51,172 (La. App. 2 Cir. 11/16/16), 209 So.3d 1015 ; State in Interest of C.V.W. , 48,166 (La. App. 2 Cir. 4/10/13), 113 So.3d 1202.
To terminate parental rights, the state must meet the onerous burden of proving one of the statutory grounds for termination set forth in La. Ch. C. art. 1015 by clear and convincing evidence. Here, the pertinent factor considered by the trial court is contained in subsection (6), which states:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.
Additionally, La. Ch. C. art. 1036 provides, in pertinent part:
C. Under Article 1015(6), lack of parental compliance with a case plan may be evidenced by one or more of the following:
(1) The parent's failure to attend court-approved scheduled visitations with the child.
(2) The parent's failure to communicate with the child.
(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
D. Under Article 1015(6), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
(Emphasis added.)
Proof by clear and convincing evidence requires a showing that the existence of the disputed fact is highly probable, meaning more probable than its *559 nonexistence. State in Interest of T.P., supra. Once a ground for termination is established, the trial court may terminate parental rights if termination is in the best interest of the child. La. Ch. C. art. 1037(B) ; State in Interest of J.M.L. , 47,201 (La. App. 2 Cir. 4/11/12), 92 So.3d 447.
A parent who professes an intention to exercise his or her parental rights and responsibilities must take some action in furtherance of the intention to avoid having those rights terminated. State in Interest of C.S. , 49,955 (La. App. 2 Cir. 3/18/15), 163 So.3d 193.
The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parent to be terminated. As such, the primary concern of the courts and the state remains to secure the best interest of the child, including termination of parental rights if justifiable grounds exist and are proven. State ex rel. K.G. , 2002-2886 (La. 3/18/03), 841 So.2d 759 ; State in Interest of C.V.W., supra.
Notably, as stated by the Louisiana Supreme Court in State ex rel. J.A., 1999-2905 (La. 1/12/00), 752 So.2d 806, 811 :
The State's parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration.
Initially, we note the lack of precise reasoning by the trial court for this drastic action in terminating CKD's parental rights. It stated that:
[I]n this case [it] does find that the evidence warrants a termination of parental rights as to each of the ... children as to each of the parents. The state has established by clear and convincing evidence that the state is entitled to termination of ... [CKD's] rights and the reciprocal rights to their parents.
And the Court also finds particularly that termination of the parental rights in respect of ... [ALD] and [LSD] is in each of those children's best interest.
When asked for the specific grounds for the termination, the trial court only reasoned, "With respect to father, it is under 1015(6)." The trial court did not make any credibility determinations or analysis of the evidence for our benefit.
*560 We find that the facts of this case are directly analogous to those in State ex rel. H.A.S. , 2010-1529 (La. 11/30/10), 52 So.3d 852. In that case, the state had obtained custody of the children based on allegations of neglect, sexual abuse, and longstanding and chronic substance abuse. Ultimately, the trial court terminated the mother's parental rights, because she had not substantially complied with her case plan and had no reasonable expectation of significant improvement of her condition or conduct in the near future.[4] Specifically, the mother had failed to submit to psychological counseling and had tested positive for drugs 13 out of 17 random drug screens. Two doctors testified at the termination hearing-both describing profound psychological disorders and substance abuse, but concluding that the mother was engaged in her treatment. The appeal court reversed the parental termination and reinstated the mother's parental rights, effectively reuniting her with the children. State ex rel. H.A.S. , 2009-1530 (La. App. 3 Cir. 6/2/10), 38 So.3d 1278. Upon review, the Louisiana Supreme Court reversed the appeal court as far as the reunification, but also agreed that parental termination was not in the children's best interest and that the state had not proven the mother lacked a reasonable expectation of significant improvement in her conduct in the near future. State ex rel. H.A.S. , 52 So.3d at 862. The supreme court ordered strict instructions for the furtherance of the proceedings in the trial court in light of the reversal. Id.
Here, considering State ex rel. H.A.S., supra , we conclude DCFS did not meet its burden of proving the elements required under La. Ch. C. art. 1015(6) by clear and convincing evidence. Regarding CKD's "substantial" compliance with his case plan, probably the most serious aspect would be his substance abuse, as in State ex rel. H.A.S., supra . CKD testified that he completed "phase one" on Active Recovery regarding his substance abuse. At the time of the hearing, he was back at Active Recovery as an outpatient receiving services for parenting, anger management, and substance abuse. A DCFS case worker also testified that CKD was compliant with her requests for random drug tests, a specific component of his case plan. While CKD's condition is of great concern, we do not believe the trial court gave enough emphasis to the progress CDK has made toward being drug-free, particularly his "substantial" compliance. Clearly, CDK has not disregarded the issue. In taking random drug screens and pursuing consistent substance abuse treatment, CDK is exhibiting substantial effort to overcome his habit and substantially comply with his case plan. As to providing a home for the children, it is evident that the house appeared in disarray and disrepair when a DCFS case worker visited. However, the house has belonged to his family for some time, which weighs in his favor, and he has stated he knows it must be improved. Again-he made an effort forward in this regard and has not totally disregarded the case plan's requirements. Some consideration should be made for an attempt to comply, especially where such a drastic action is in consideration. Finally, he had worked seven months for a house foundation repair company, but had recently secured permanent employment, which he expressed was the desire of the court. All of these actions, although admittedly not perfect adherence, were in furtherance of his case plan and show an attempt to *561 comply. Notably, the statute does not require "perfect parental compliance," but "substantial parental compliance."
We note that assessment of whether there is a reasonable expectation of significant improvement in the parent's condition in the near future should be made in light of the purposes stated in La. Ch. C. art. 1001, particularly that the proceedings shall be conducted expeditiously to avoid delays in resolving the status of the parent and in achieving permanency for the children. See State ex rel. L.R.S. , 38,812 (La. App. 2 Cir. 6/23/04), 877 So.2d 1040. However, here there was not clear and convincing evidence at trial to indicate that there was no reasonable expectation of significant improvement in the father's condition or conduct in the near future, particularly considering the length of time involved. We note expressly in the short period of time these proceedings have been ongoing, CKD has made a concerted effort to obtain more reliable employment. He has also made efforts to attain secure housing for the children, in a house that has been in his family for some time. Finally, while not altogether or consistently successful, he appears to be working at his substance abuse problem. We feel that his efforts are more positive in nature and tend to show a more positive trend than negative. It is not as if he made no improvement in his condition; thus, it is more reasonable than not that he would make significant improvement in the future. Additionally, there was no expert testimony offered by the state tending to show CKD has no possibility of improvement. With no articulated specific reasons by the trial court on this issue, we must determine its conclusion was manifestly erroneous.
We also note that although the children have not appealed the termination, their appellate counsel has appeared and argued that the trial court was manifestly erroneous in its judgment. Counsel argues that the children are bonded with their father, who has made strides towards preserving the parent-child relationship. It is the position of the children's appeal counsel that termination in this case was premature, and the termination is not in their best interest.
Pursuant to La. Ch. C. art. 1039 :
If the court finds that the alleged grounds are not proven in accordance with the evidentiary standards set forth in Article 1035 or if the court finds that termination of parental rights is not in the best interests of the child, it shall enter written findings on both issues and may:
(1) Dismiss the petition.
(2) Reinstate the parent to full care and custody of the child.
(3) If the child has been previously adjudicated as a child in need of care, reinstate that proceeding pursuant to Title VI.
(4) Upon a showing of sufficient facts, adjudicate the child in need of care in accordance with Title VI.
(5) Upon a showing of sufficient facts, adjudicate the family in need of services in accordance with Title VII.
(6) Make any other disposition that is in the best interest of the child.
Thus, considering the foregoing and the extreme nature of the termination of parental rights, we conclude DCFS did not prove by clear and convincing evidence that termination of CKD's parental rights was warranted. Further, considering the record before us, we are constrained to reverse the trial court's judgment. The trial court erred in terminating CKD's parental rights based on a lack of substantial compliance with his case plan and no reasonable expectation of significant improvement *562 in his condition or conduct in the near future. We reverse the termination of CKD's parental rights pursuant to the mandate by the Louisiana Supreme Court in State ex rel. H.A.S., supra , but remand the proceeding to the trial court for further proceedings. DCFS shall maintain custody of the children, the CINC proceeding will be reinstated, and the children will remain placed with their great-uncle, Dan Linnell. A case plan will be implemented, with continued focus on CKD's substance abuse, housing, and steady employment. Although CKD's parental rights are reinstated as of now, he must strictly comply with the trial court's orders and the case plan of DCFS for the future well-being of his young children.
CONCLUSION
For the foregoing reasons, the trial court's judgment terminating the parental rights of CDK is reversed and remanded with instructions for further proceedings in accordance with this opinion.
REVERSED AND REMANDED, WITH INSTRUCTIONS.
APPLICATION FOR REHEARING
Before Brown, Garrett, Stone, Cox, and Stephens, JJ.
Rehearing denied.

NML has three additional children, GP, AP, and, TP, who were removed from the home as well. GP and AP are the children of Terry Pittman, who at the time of these proceedings was serving sentences in the Louisiana State Penitentiary for one count of indecent behavior with juveniles, one count of molestation of a juvenile under the age of 13, and one count of pornography involving juveniles. The third child, TP, was initially a part of these proceedings, but was later to be determined the biological child of another man, and DCFS's custody to that child was vacated on October 20, 2016.

Notably, a copy of the case plan originally was not made part of the appeal record. Because the trial court took judicial notice of the case plan at the termination hearing, this court requested the appeal record be supplemented with a copy of the judgments and case plan associated with the CINC proceeding.

The trial court also considered NML's parental rights as to GP and AP, who were in the custody of their paternal grandparents. Her parental rights to those children were terminated as well in the same proceeding.

At the time of that case, the legal standard articulated in La. Ch. C. art. 1015 was contained in subsection (5) of the article.